UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
Brian Hozer,

                                   Plaintiff,            **MEMORANDUM RULING**

    -against-                                      Case No. 10-cv-03874 (TLM)

Pratt Industries (USA), Inc., Pratt Paper (NY), Inc.,
and Will Egan,

                                  Defendants,
------------------------------------------------------------- X

      Before the Court is defendants Pratt Paper (NY), Inc. and Will Egan's Motion for Summary Judgment [Rec. Doc. 21], plaintiff Brian Hozer's Memorandum in Opposition thereto [Rec. Doc. 22], and defendants' Reply Memorandum [Rec. Doc. 23] in further support of the Motion. Defendants move for summary judgment on all of plaintiff's claims pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, defendants' Motion will be GRANTED.

      Plaintiff Brian Hozer alleges that his employer, Pratt Paper (NY), Inc. ("Pratt"), terminated him in retaliation for opposing what he believed to be unlawful discrimination. Plaintiff brings a retaliation claim against defendant Pratt under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. ("Title VII"), as well as retaliation claims against defendants Pratt and Egan[1] under the New York State Human Rights Law, New York Executive Law § 296 ("SHRL") and the New York City Human Rights Law, New York City Administrative Code § 8-107 ("CHRL").

---

[1] Unlike Title VII, an individual defendant may be held liable for retaliation under the SHRL and/or the CHRL if he "actually participates in the conduct giving rise to" the plaintiff's retaliation claim. *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011) (internal quotation marks omitted); *Spiegel v. Schulmann,* 604 F.3d 72, 79 (2d Cir. 2010); *Schanfield v. Sojitz Corp. of America*, 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009).

**I. Background**

Pratt is a corporation that operates a paper-making facility in Staten Island. Rule 56.1(b) Stmt. ¶ 1.[2] Plaintiff Brian Hozer began working at Pratt in April 2008. Rule 56.1(b) Stmt. ¶ 20. Hozer is a veteran of the United States Air Force and Coast Guard and is married to a woman of Jewish descent. Hozer Dep. at 33, 112. On the evening of April 12, 2009, Hozer was working a shift at Pratt's Staten Island facility in the "mill" division, the division of the facility that manufactures and prepares paper for distribution. Rule 56.1(b) Stmt. ¶¶ 10-11, 34. Pratt employee Will Egan was also working in the mill division on the evening of April 12, 2009. Rule 56.1(b) Stmt. ¶ 34. Egan is a veteran of the United States Army and his girlfriend and mother of his child is "of Jewish ancestry." 56.1(b) Stmt. ¶¶ 6, 8. While operating the crane, Hozer, "as a joke," donned a safety vest and put tape on his arms and legs. Rule 56.1(b) Stmt. ¶¶ 39-41.

The parties allege different versions of the events that followed. Hozer alleges that while he was working, Egan asked Hozer to turn around and placed pieces of tape on Hozer's back in the form of a swastika symbol. Compl. ¶ 18; Hozer Dep. at 180. Hozer admits that he knew Egan had put "something" on his back, but asserts that he did not immediately notice it was a swastika symbol. Compl. ¶ 19; Hozer Dep. at 180. Hozer further alleges that he saw the swastika symbol "in the mirror" moments before Egan "ripped it off." Hozer Dep. at 180.

According to Egan, during the April 12, 2009 shift Hozer asked Egan to place tape onto

---

[2] Plaintiff's Complaint also names Pratt Industries (USA), Inc. as a defendant in this action, and alleges that it is the corporate parent of Pratt Paper (NY), Inc. Compl. ¶ 10. Defendants' Answer denies that Pratt Industries (USA), Inc. is the corporate parent of Pratt Paper (NY), Inc. Answer ¶ 10. As plaintiff fails to establish a prima facie case of retaliation, the Court need not consider the nature of the corporate relationship between Pratt Industries (USA), Inc. and Pratt Paper (NY), Inc. However, the Court will dismiss, *sua sponte*, plaintiff's claim against Pratt Industries (USA), Inc.

Hozer's back in the form of a swastika. Egan Decl. ¶¶ 9-10. Egan asserts that he placed tape on Hozer's back in the form of a "T" or a "plus figure," but later noticed that Hozer had added tape to his back to complete a swastika symbol. Egan Decl. ¶¶ 9-11.

Hozer alleged in his complaint that on the evening of April 12, 2009 he went to the office of his supervisor, Steve Mullet, in order to "complain about the actions of Mr. Egan." Compl. ¶ 21. At Hozer's April 13, 2011 deposition, Hozer testified that he went to Mullet's office to ask for more help on the "floor," and further testified that it was Mullet who broached the subject of the swastika incident. Hozer Dep. at 207, 209.

Later on the evening of April 12, 2009, Mullet instructed Hozer to write a statement describing the swastika incident. Rule 56.1(b) Stmt. ¶ 59. Hozer testified in his deposition that, before writing his statement, he told Mullet that "there's no way I would ever do that, you know. I objected to him, uhm, in the office." Hozer Dep. at 210. Hozer then wrote his statement describing the swastika incident, in which he stated:

> Sometime at the beginning of the shift, Will Egan applied tape to the back of my vest. Not knowing what he had taped, I noticed a symbol in the window reflection. Will removed what he had taped to my back shortly after. I took this as "just a bad joke" and nothing more. (Def. Ex. 6).

Hozer was picked up from the Pratt facility by his wife at the end of his shift on the morning of April 13, 2009 at approximately 7:00 a.m. Rule 56.1(b) Stmt. ¶ 62; Hozer Dep. at 223. During their drive home, Hozer told his wife that "I feel that I'm in trouble . . . they think I did something that I didn't do and I'm being accused of it." Rule 56.1(b) Stmt. ¶ 62; Hozer Dep. at 218. Hozer asked his wife to drive him back to the Pratt facility so that he could speak to Pratt General Manager John Hennessey about the swastika incident. Rule 56.1(b) Stmt. ¶ 62. Plaintiff testified in his

3

deposition that upon returning to the Pratt facility he told Hennessey that:

> I would never put a swastika on my back. It's extremely offensive. It's a swastika. It represents how many, you know, Jews have died. I was in the military. My wife is Jewish. You know it's against everything I fought for. And there's absolutely no way I would do this. I love this job. Hozer Dep. at 218-19.

In contrast to Hozer's deposition testimony, Hennessey testified during his May 9, 2011 deposition that, during this conversation, Hozer did not state that he found the swastika symbol offensive or that his wife was Jewish. Hennessey Dep. at 70.

At approximately 9:00 a.m. on April 13, 2009, Hozer wrote another statement regarding the swastika incident and submitted it to Hennessey. Rule 56.1(b) Stmt. ¶¶ 64-67; Hozer Dep. at 222. In Hozer's second statement, he asserted that:

> On 4-12-09, after a safety meeting, I Brian Hozer applied tape and a vest on my person for a laugh. Will Egan completed the back of the vest with a symbol. After walking around for a while (20 min) Will eventually took back the tape back off [sic] realizing the damage it may cause. (Def. Ex. 7).

On April 20, 2009, Hozer was interviewed by Hennessey and Keelie Cruz, Pratt's Human Resource Manager. Rule 56.1(b) Stmt. ¶ 77. Hozer testified during his deposition that at this meeting he told Hennessey and Cruz that "the symbol was offensive and I would never do that." Hozer Dep. at 233. Hozer also testified that during the April 20, 2009 meeting he told Hennessey and Cruz that he had no complaints about anyone at the company, and that he thought the swastika incident was "just a joke." Hozer Dep. at 228. John Hennessey testified during his deposition that during this meeting Hozer claimed, in substance, that he was the "victim" of a "prank." Hennessey Dep. at 29.

On April 23, 2009, Hozer was called into a meeting with Egan, Cruz, Muneer Ahmad, Pratt's "head of manufacturing," and Frank Guaragno, Hozer's union representative. Rule 56.1(b) Stmt. ¶

4

79; Hozer Dep. at 233. Hozer asserts that he "objected" at this meeting by stating that:

> I wouldn't jeopardize my job by putting a swastika on my back. And it's against everything–I know what this symbol stands for. A lot of people died. It's an offensive symbol. Uhm, it goes against everything that I represented when I was in the military. Uhm, there's absolutely no way. It's against my judgment and there's no way that I would do this. Hozer Dep. at 234-35.

Hozer, Egan, and Muneer then viewed a video recorded by Pratt's security camera, which showed Hozer operating a crane with a swastika symbol on his back. Hozer Dep. at 235, 238. Mullet then entered the meeting and informed Hozer that his employment with Pratt was being terminated for violation of company policy. Rule 56.1(b) Stmt. ¶ 86.

**II. Summary Judgment Standard**

Summary judgment is appropriate only when the record reflects that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Such a determination is to be made "after construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in its favor." *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009).

Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the nonmoving party has the burden of proof at trial, the moving party must satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim, and if the moving party succeeds the burden shifts to the non-moving party to show that there is a genuine issue for trial. *Id.* at 322-23.

Once the burden shifts to the non-moving party, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Id.* at 324. The non-moving party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970).

There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If no issue of fact is presented and if the movant is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322.

**III. Discussion**

*A. Legal Standard*

Retaliation claims under Title VII, the SHRL, and the CHRL are evaluated using the three-step burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (applying *McDonnell Douglas* to employment discrimination claims under the SHRL and the CHRL). First, the plaintiff bears the burden of establishing a prima facie case of retaliation. *See Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir.2004). If a plaintiff meets his burden in establishing a prima facie case, the defendant-employer must then articulate a "legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. A plaintiff must then provide evidence

that the employer's explanation is not true, but rather a pretext for discrimination. *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir.2001).

To establish a prima facie case of retaliation, the plaintiff must "adduce evidence sufficient to permit a rational trier of fact to find (1) that he engaged in protected [activity], (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 205–06 (2d Cir.2006) (quotations and alterations omitted).

Under Title VII, the SHRL, and the CHRL, a plaintiff engages in protected activity when he "opposes" a practice made unlawful by those statutes. 42 U.S.C. § 2000e-3(a); New York Executive Law § 296(1)(e); New York City Administrative Code § 8-107(7). A plaintiff can establish that he engaged in protected activity "even when the underlying conduct complained of was not in fact unlawful so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (quotations omitted). Protected activity includes not only the filing of formal discrimination charges, but also "informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir.1990).

### B. Plaintiff's Retaliation Claims

Hozer argues that he engaged in protected activity each time he informed a Pratt supervisor that he found the swastika symbol to be "offensive." However, the evidence in the record that is

7

before the Court establishes that each time Hozer stated that he found the swastika symbol to be offensive or otherwise expressed disagreement with a Pratt supervisor, he was attempting to rebut accusations of inappropriate workplace behavior rather than objecting to an act of unlawful discrimination. Before writing his April 12, 2009 statement, Hozer told Mullet that "*there's no way I would ever do that*, you know. I objected to him, uhm, in the office." Hozer Dep. at 210 (emphasis added). Upon returning to the Pratt facility on the morning of April 13, 2009, Hozer told Hennessey that "*I would never put a swastika on my back*. It's extremely offensive . . . *And there's absolutely no way I would do this*. *I love this job.*" Hozer Dep. at 218-19 (emphasis added). During Hozer's April 20, 2009 meeting with Hennessey and Cruz, he told them "the symbol was offensive *and I would never do that.*" Hozer Dep. at 233 (emphasis added). At the April 23, 2009 meeting with Egan, Cruz, Ahmad, and Guaragno, Hozer stated "*I wouldn't jeopardize my job by putting a swastika on my back*. And it's against everything–I know what this symbol stands for. A lot of people died. It's an offensive symbol . . . *It's against my judgment and there's no way that I would do this*." Hozer Dep. at 234-35 (emphasis added).

Based on the record, Hozer has not met his burden of establishing a prima facie case of retaliation. All of Hozer's statements during Pratt's investigation of the swastika incident were, given the context in which they were made, made for the purposes of maintaining continued employment with Pratt. Thus, Hozer's retaliation claims under federal, state, and municipal law must be dismissed.

**IV. Conclusion**

Defendants' Motion for Summary Judgment [Rec. Doc. 21] on plaintiff's retaliation claims under Title VII, the SHRL, and the CHRL will be GRANTED. Judgment dismissing all of plaintiff's retaliation claims against all defendants with prejudice will be entered forthwith.

_____
Tucker L. Melançon
United States District Judge

June 6, 2012
Brooklyn, NY